Kenneth L. WRONKE,
Plaintiff-Appellee,

v.

John O. MARSH, Secretary of the Army, et al.,
Defendants-Appellants.

No. 85–1748.

United States Court of Appeals,
Seventh Circuit.

Submitted July 2, 1985.
Decided July 18, 1985.

J. Steven Beckett, Reno O'Byrne & Kepley, Champaign, Ill., for plaintiff-appellee.

Charlene A. Quigley, Asst. U.S. Atty., Danville, Ill., for defendants-appellants.

Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.

## ON MOTION TO TRANSFER

PER CURIAM.

Kenneth L. Wronke, formerly a major in the Army Reserve, was given a general discharge in 1982 after an Elimination Board found that he has misrepresented his qualifications as a military pilot in the course of obtaining a commercial pilot's license. He immediately filed suit, which the district court promptly dismissed on the ground that he had not exhausted his military remedies. He filed a notice of appeal to this court on August 6, 1982, and we affirmed on June 1, 1983, in an unpublished order.

Meanwhile Wronke had initiated the administrative process, and when that had run its course he filed a new complaint on August 11, 1983. His complaint, based on the Constitution and his contract of enlistment, sought reinstatement and other equitable relief, coupled with back pay not to exceed $9,999.99. This sum obviously was chosen to comply with the Tucker Act, 28 U.S.C. § 1346(a)(2), which limits to $10,000 the monetary claims founded on the Constitution or a contract with the United States that may be pursued in the district courts. But Wronke's complaint did not mention the Tucker Act. It asserted as grounds of jurisdiction only 28 U.S.C. §§ 1331, 1343, and 1361—federal question jurisdiction, civil rights jurisdiction, and mandamus jurisdiction. (It also invoked the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and the Administrative Procedure Act, 5 U.S.C. § 705, but neither is a grant of jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed.2d 1194 (1950).)

The district court, 603 F.Supp. 407, concluded that the Army had violated its own regulations in discharging Wronke. It ordered him reinstated with all rank and privileges plus back pay not to exceed $9,999.99. The Army took an appeal to this court but has changed its mind. It asks us to transfer the case to the Federal Circuit under 28 U.S.C. § 1631. Wronke opposes the motion, contending that it would be inefficient and unjust to continue the litigation in a court other than the one that heard the first appeal.

Before considering this argument, however, we must determine whether this appeal lies within the exclusive jurisdiction of the Federal Circuit under 28 U.S.C. § 1295(a)(2). Section 1295(a)(2) gives that court exclusive jurisdiction of an appeal if the jurisdiction of the district court "was based, in whole or in part, on section 1346 of this title, except" in certain situations that are not relevant here. Wronke's complaint did not mention § 1346. But the statutes the complaint invoked do not authorize monetary relief against the United States. The district court recognized this and concluded that the Tucker Act was the source of its authority to grant back pay. The suit was therefore "based ... in part" on § 1346, which places it within the exclusive appellate jurisdiction of the Federal Circuit.

"[A] plaintiff whose claims against the United States are essentially contractual should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C.Cir.1982). Doubtless difficult roads lie ahead for courts and litigators, who must select an appellate forum based on the real rather than ostensible source of the district court's jurisdiction. This difficulty is inescapable under the statute, however, which makes the Federal Circuit's jurisdiction exclusive if the claim rests "in part" on the Tucker Act. This is not a grant to be read restrictively, for the plan of the statute is to consolidate all Tucker Act appeals in a single forum. We cannot accept jurisdiction of a case such as this one without creating the possibility of discordant interpretations that Congress meant to eliminate. See S.Rep. 97–275, 97th Cong., 2d Sess. 19–20 (1982), U.S.Code Cong. & Admin.News 1982, p. 11.

Wronke asks us to retain the case in order to promote efficient judicial adminis-

tration. Retention, he says, is in the interest of justice. He cites *Squillacote v. United States,* 747 F.2d 432 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2021, 85 L.Ed.2d 302 (1985), which retained jurisdiction of an appeal that had been argued and decided before the jurisdictional flaw was discovered. The ink was hardly dry on that opinion before the District of Columbia Circuit rejected it, holding that a court lacks power to decide a case over which it has no jurisdiction, however desirable or "efficient" such a course may be. *Professional Managers' Association v. United States,* 761 F.2d 740 (D.C.Cir.1985).

Our court accords respectful attention to the reasons other circuits give when they find our opinions wanting. We need not revisit *Squillacote,* however, because that decision was explicitly limited to the case at hand. The case had been fully argued and decided on the merits before the court discovered the jurisdictional problem, the court was concerned about forum-shopping by litigants seeking review by two courts of appeals, and the opinion denying rehearing made it clear that future cases would be transferred to the Federal Circuit before disposition as the statute requires. 747 F.2d at 433–34, 439–40.

■ One further problem, which neither party addresses. Section 403(e) of the Federal Courts Improvement Act of 1982, P.L. 97–164, provides that despite § 1295 "[a]ny case in which a notice of appeal has been filed in a district court of the United States prior to the effective date of this Act [October 1, 1982] shall be decided by the court of appeals to which the appeal was taken." There is no legislative history behind this provision; the Senate Report just says it "provides for the orderly disposition of cases pending on the effective date" (S.Rep. 97–275, *supra,* at 32, U.S.Code Cong. & Admin.News 1982, p. 42) without further explanation. The District of Columbia Circuit has read the savings clause broadly to preserve the jurisdiction of the regional circuits even though the notice filed before October 1, 1982, was ineffectual. *Weisberg v. Department of Justice,*

763 F.2d 1436 (D.C.Cir.1985). But see *id.* at 1436–1438 (Bork, J., dissenting). A notice of appeal from the district court's first decision was filed on August 6, 1982, and so we must decide whether this is the same "case" as that.

As a technical matter it is not the same "case" in the district court. Wronke filed a new suit after the completion of the administrative process. It carries a new docket number in the district court. It is also not the same "case" in this court. It is a fresh appeal from a new judgment.

There is no particular reason to read "case" expansively to wrench cases away from the Federal Circuit. Section 403(e) is a savings clause, designed to prevent the transfer of cases mid-way through their adjudication by a court. A mid-appeal transfer exposes litigants to potentially conflicting timetables and rules; it may require duplication of effort (consider a case that was under advisement on October 1, 1982); still worse, a sudden influx of all Tucker Act cases pending on October 1, 1982, might have overburdened the newly-formed Federal Circuit. A case that started out in a regional circuit before October 1, 1982, therefore stays there under § 403(e). We decided Wronke's first case under the authority of § 403(e).

The district court's judgment that is the subject of this appeal post-dates October 1, 1982. This circuit treats successive appeals as entirely new cases whether or not the cases go under different docket numbers in the district courts. Were this appeal to stay here it would be assigned to a new panel chosen at random (see Internal Operating Procedure 6(b)); it cannot be thought to be a continuation of the first appeal. A transfer of this case would not expose the Federal Circuit to an unanticipated burden or the parties to a mid-appeal change of rules. The Federal Circuit regularly hears post-1982 appeals in cases in which earlier decisions had been rendered by regional circuits. *E.g., Smith International, Inc. v. Hughes Tool Co.,* 759 F.2d 1572 (Fed.Cir.1985). Any other outcome prevents the Federal Circuit from afford-

ing the uniform treatment that was the reason for its creation. We therefore conclude that once a regional circuit completes the processing of any appeal initiated before October 1, 1982, any further appellate review of a fresh judgment under a fresh notice of appeal is not governed by § 403(e).

This appeal is transferred to the Federal Circuit under 28 U.S.C. § 1631.