**LONZA INC., Plaintiff,**

v.

**ROHM AND HAAS, INC., Defendant.**

**No. 96 Civ. 6258 (LAK).**

United States District Court,
S.D. New York.

Jan. 8, 1997.

William F. Dudine, Jr., Bert J. Lewen, Joseph R. Robinson, Charles S. Ryan, Darby & Darby, Inc., for Plaintiff.

Jeffrey A. Hovden, Hopgood, Calimafde, Kahil & Judlowe, Rudolph E. Hutz, M. Richard Powers, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

In the years prior to the creation of the Federal Circuit and the conferral upon it of exclusive jurisdiction of patent appeals, the use of actions for declaratory judgments of patent invalidity and non-infringement in the service of shopping for a favorable forum was raised to a high art form. This case evidences the fact that the practice has not been eliminated despite the fact that all appeals in patent cases go to the same appellate court irrespective of the districts in which they are determined.

### Facts

Defendant Rohm and Haas, Inc. ("R & H") in early 1995 advised plaintiff Lonza Inc. ("Lonza"), in substance, that Lonza's sale of a biocide referred to by R & H as "SKI-CIDE" and sold by Lonza as "ISOCIL" might infringe R & H's U.S. patent nos. 4,252,694 (the " '694" patent), 4,265,899 (the " '899" patent), and 5,312,827 (the " '827" patent) and that its method of manufacture might infringe R & H's U.S. patent nos. 5,068,338 (the " '338" patent) and 4,939,266 (the " '266" patent). In December 1995, R & H notified its customers of Lonza's product and warned them that R & H had patents on this product under the '694, '899, and '338 patents.

R & H and Lonza thereafter agreed to negotiate with a view to resolving their dispute. The agreement provided that neither would institute litigation regarding the patents for seven calendar days following the faxed notification of a notice of termination of the negotiations. On August 10, 1996, R & H gave notice of termination. The notice stated, among other things, that R & H "commits that it will not initiate litigation, now or in the future, against Lonza based on [the '694 or '899 patents] with respect to any product currently offered for sale by Lonza."

R & H's August 10 letter triggered a race to the courthouse. On the morning of August 19, 1996, R & H sued Lonza for infringement of the '827 patent in the United States District Court for the Eastern District of Pennsylvania, and Lonza sued R & H in this Court for a declaration that the '827, '694 and '899 patents are invalid and not infringed as well as for unfair competition. According to the time stamps affixed by the respective clerks' offices, Lonza's action in this court was filed at 8:48 a.m., while R & H's action in Philadelphia was filed nine minutes later. The record does not disclose which litigant

actually arrived at its chosen court house first or whether either party was delayed in filing in the relevant clerk's office for reasons outside its control.[1]

As might be expected, each side filed a motion the object of which was to concentrate the entire dispute in its favored forum. Lonza moved in Philadelphia to transfer R & H's action to this Court pursuant to 28 U.S.C. § 1404(a). On November 15, 1996, the Honorable Edmund V. Ludwig, Jr., denied Lonza's motion "without prejudice to a consolidation of both actions in either district." *Rohm and Haas Co. v. Lonza, Inc., et ano.*, No. 96–5732, 1996 WL 672258 (E.D.Pa. filed Nov. 15, 1996). R & H moves here to dismiss Lonza's claims for declarations with respect to the '694 and '899 patents and to dismiss or stay the claim with respect to the '827 patent in deference to the Eastern District of Pennsylvania action.

The effect of Judge Ludwig's decision, of course, is that these related and overlapping actions will proceed simultaneously in two different fora less than 90 miles apart unless (a) this Court dismisses, stays or transfers this action, or (b) a motion to consolidate for pretrial purposes is made pursuant to 28 U.S.C. § 1407 and granted by the Judicial Panel on Multidistrict Litigation. No such application is pending before the Panel.

*Discussion*

*The Motion to Dismiss*

■ A case or controversy exists with respect to a putative claim of patent infringement only where there is:

"both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which would constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993). *Accord, EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.Cir.),

*cert. filed,* 65 U.S.L.W. 3381 (Nov. 7, 1996) (No. 96–743).

A promise not to sue on a patent eliminates any reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit and thus prevents satisfaction of the first prong of the *BP Chemicals* test. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058–60 (Fed.Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996). R & H's express written commitment not to sue on the '694 and '899 patents, particularly coupled with the fact that those patents will expire on February 24 and May 5, 1998, respectively, would seem to eliminate any reasonable apprehension of an infringement suit thereon and require dismissal of Lonza's declaratory claims with respect to those patents.

Lonza initially countered by arguing that various actions taken by R & H prior to August 10, 1996 created a reasonable apprehension of suit and that the August 10, 1996 letter did not fully dissipate that apprehension. It based the contention on the fact that the letter committed not to sue only with respect to products then "currently offered for sale by Lonza." It said that Lonza added two new products to its own line in September 1996, after the date of R & H's letter, which could not be comprehended within R & H's commitment as to products currently marketed as of August. (Pl. Mem. 7–8) At oral argument, however, R & H's counsel, in response to the Court's question, represented that R & H "covenants, promises and agrees on behalf of itself and any successors in interest not to sue Lonza or its customers under the '694 and '899 patents." In reliance on that representation, counsel for Lonza conceded that there is no justiciable controversy with respect to those patents. Accordingly, R & H's motion to dismiss so much of the complaint as seeks relief with respect to the '694 and '899 patents for lack of subject matter jurisdiction in consequence of the lack of a justiciable case or controversy is granted.

---

1. At oral argument, counsel for R & H represented that its representative had to wait on line to file R & H's complaint and attributed the entire difference in filing time to that delay.

*The Motion to Dismiss or Stay*

There remains R & H's motion to dismiss Lonza's claim for a declaration of invalidity and non-infringement with respect to the '827 patent, which of course completely duplicates the substance of R & H's Eastern District action for infringement of that patent.

Courts have discretion whether to entertain actions for declaratory judgments. *E.g., A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); *EMC Corp.*, 89 F.3d at 810; *Federal Insurance Co. v. May Dept. Stores Co.*, 808 F.Supp. 347, 349 (S.D.N.Y.1992); *Great American Insurance Co. v. Houston General Insurance Co.*, 735 F.Supp. 581, 585 (S.D.N.Y.1990); *see Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In circumstances like those at bar, the exercise of discretion must conform to the standard set forth by the Federal Circuit in *Serco Services Co., L.P. v. Kelley Co.*, 51 F.3d 1037 (Fed.Cir.1995). In general, "[t]he first-filed action is preferred, even if it is declaratory, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" *Id.* at 1039 (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed.Cir.1993), *cert. denied sub nom. Regents of Univ. of California v. Genentech, Inc.*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994)). Nonetheless, the district court is entitled to consider such factors as the relative convenience of the two fora to parties and witnesses and the availability of evidence in each forum. *Id.* Moreover, the court may consider also whether the declaratory action was an anticipatory suit designed to preempt an anticipated infringement action and, if so, to weigh that in the scales as a factor favoring dismissal. *EMC Corp.*, 89 F.3d at 813–14; *Serco Services Co.*, 51 F.3d at 1039–40.

■ Here, the balance of convenience favors the Eastern District action. R & H is headquartered literally across the street from that court house [2] and about 85 miles from this one. Lonza is headquartered in Fair Lawn, New Jersey, which is only a few miles closer to this court house than to the one in Philadelphia. Thus, litigation in Philadelphia would be considerably more convenient for R & H than litigation in New York City, whereas the two fora would be substantially equivalent in convenience to Lonza. And while Lonza attempts to portray New York City as the center of gravity of the issues in suit, its effort is baseless. The alleged infringements occurred wherever the accused products were sold, locations which include but by no means were predominantly in this district. The fact that Lonza is a party to a distribution agreement negotiated in New York is simply immaterial as is the fact that several major personal care companies are headquartered here.[3] There has been no showing that any material witness unaffiliated with either of the parties would be subject to subpoena in New York but not in Philadelphia. The net of the convenience considerations, therefore, is that the Philadelphia forum is more convenient than this one.

A second consideration, of course, is the anticipatory and preemptive nature of Lonza's suit. Lonza knew by virtue of the negotiation agreement and R & H's notice that R & H would sue it for infringement on August 19. Each side scrambled to get to its chosen court house first. Despite the fact that Lon-

---

**2.** The research facility at which the research and development records relevant to this matter are stored is located in the Eastern District within 20 miles of that court house.

**3.** Lonza maintains that the presence of some personal care companies is relevant to its unfair competition claim. If there prove to be witnesses from those entities, however, their depositions doubtless would be taken in New York irrespective of where the action is pending. Giv-

en the proximity of Philadelphia to New York, they would be subject to compulsory process issued by the Eastern District of Pennsylvania. Hence, the only significance of any such witnesses would be the slightly added convenience of testifying at trial in New York City as opposed to taking a short trip to Philadelphia. This must be balanced against the substantial increase in convenience to R & H and the lack of any substantial difference to Lonza.

za's papers were time stamped nine minutes earlier than R & H's, it is not even clear that Lonza won the race, as it is unclear whether that minute time differential was the product of Lonza's earlier arrival or the earlier availability in this district of a clerk prepared to stamp the papers.

Third, it must be noted that entertaining this action would not serve the objectives for which the Declaratory Judgment Act was passed. The Act was intended to provide a vehicle by which parties could obtain judicial determinations of unsettled legal positions, not a means of procedural manipulation in search of a forum perceived by a prospective defendant as more favorable. *See, e.g., BP Chemicals, Ltd.,* 4 F.3d at 977; *Great American Insurance Co.,* 735 F.Supp. at 586. The Court would disregard this important point were it to accord no weight at all to motive for and the circumstances of Lonza's filing of this action. Moreover, there simply is no reason why the patent issues in dispute should be litigated in two different fora. *See EMC Corp.,* 89 F.3d at 814 (in determining whether to dismiss first filed declaratory judgment action, court may consider whether maintenance of action would serve purposes of Declaratory Judgment Act).

Taking into account the fact that the Eastern District would be a more convenient forum than this one, the unseemly race to the court house, the fact that the time differential in filing is so small as to leave the issue of which side actually won the race in doubt, and the fact that the underlying purpose of the Declaratory Judgment Act would not be served by entertaining this action, the Court concludes that there are "sound reason[s] that would make it unjust or inefficient to continue [this] action." *Genentech,* 998 F.2d at 938. This conclusion is reinforced by the denial of Lonza's transfer motion in the Philadelphia action, which means, as a practical matter, that the patent issues will be litigated in Philadelphia irrespective of this Court's decision. Accordingly, the claim for declaratory relief with respect to the '827 patent is dismissed given the pendency of the Eastern

District action, which will completely resolve that controversy.

*The Unfair Competition Claim*

■ Lonza seeks relief also with respect to R & H's alleged threats of legal action against current and potential Lonza customers for the accused products, claiming that its actions constitute unfair competition. While closely related to the patent issues, this unfair competition claim is not now before the Eastern District.

At oral argument, the parties consented to the Court treating R & H's motions as embracing a motion to transfer this action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Lonza conceded that this action might have been brought in that district. For the reasons indicated above, a transfer of this action to that district would serve the convenience of the parties and witnesses. It would be in the interest of justice as well. First, the pendency in that Court of the patent infringement litigation to which the remaining claim in this case is so closely related strongly favors transfer. Second, the fact that Lonza is headquartered in New Jersey and has no significant presence in this district, despite the fact that it is incorporated under the laws of New York, reduces (but does not eliminate) the weight that otherwise should be accorded to its choice of this forum. Accordingly, so much of this case as is not otherwise disposed of will be transferred to the Eastern District of Pennsylvania.

*Conclusion*

For the foregoing reasons, defendant's motion to dismiss plaintiff's declaratory judgment claims is granted. The dismissal of so much of the complaint as seeks relief with respect to the '694 and '899 patents is for lack of subject matter jurisdiction, while the dismissal of the claim with respect to the '827 patent is on the basis that the Court declines to entertain the claim for declaratory relief. Defendant's motion to transfer the case to the Eastern District of Pennsylvania pursu-

ant to 28 U.S.C. § 1404(a) is granted.[4]

SO ORDERED.

---

4. Defendant withdrew its contingent motions to dismiss the unfair competition and inequitable conduct claims at oral argument.